A05A1881. HOOKER v. THE STATE.
(629 SE2d 74)

BARNES, Judge.

Following the denial of his motion for new trial, Reginald Leonard Hooker appeals his convictions for aggravated assault, criminal trespass, and obstruction of a 911 call. Hooker complains of numerous alleged errors on appeal; however, upon our review we discern no reversible error and affirm his convictions.

1. Hooker challenges the sufficiency of the evidence. On appeal from a criminal conviction, this court views the evidence in the light

most favorable to the verdict, and a defendant no longer enjoys the presumption of innocence. *Walker v. State*, 245 Ga. App. 693 (538 SE2d 563) (2000).

So viewed, the evidence demonstrates that on April 3, 2003, Hooker approached a Home Depot employee with several brass electrical outlets that he wanted to return. He did not have a receipt for the items, so the employee called a supervisor. Hooker became irate and accused the employee of being racist. The head cashier arrived to handle the transaction, but denied Hooker's return. Hooker was very aggressive and appeared agitated and angry. He demanded to see a manager, so the cashier called Joe Farley, the loss prevention manager, to handle Hooker's complaint. Hooker exchanged words with Farley and called him a "cracker motherfucker." Farley told Hooker to leave the store and walked away, but Hooker followed him and refused to leave. Farley picked up the telephone to call 911, but Hooker grabbed the phone from him and slammed it down on the counter. Hooker pushed the bag of brass plates in Farley's face, the men fell to the floor and Hooker punched Farley in the face with his fist. The brass plates cut Farley near his eye, and his glasses cut the bridge of his nose after Hooker hit him.

As long as there is some competent evidence to support each fact necessary to make out the state's case, we will uphold the jury's verdict. *Grier v. State*, 218 Ga. App. 637, 638 (1) (463 SE2d 130) (1995). Contrary to Hooker's contention, the state's evidence sufficiently established that he was guilty of aggravated assault under OCGA § 16-5-21 (a) (2). The indictment alleged that Hooker assaulted the victim "by striking him in the face with metal plates and fists, objects . . . likely to result in serious bodily injury." It was unnecessary to further allege that defendant used the plates or his fist as deadly weapons or that there was an intent to injure. See *Gafford v. State*, 240 Ga. App. 251, 252-253 (1) (523 SE2d 336) (1999). The evidence also supported the convictions for criminal trespass, OCGA § 16-7-21 (b) (3) (a person commits the offense of criminal trespass when he knowingly and without authority remains upon the premises of another after receiving notice from the owner that such entry is forbidden), and obstruction of a 911 call, OCGA § 16-10-24.3; *Weaver v. State*, 256 Ga. App. 573, 574 (1) (568 SE2d 836) (2002).

2. Hooker contends the trial court erred by admitting evidence of a prior aggravated assault as a similar transaction because it was not sufficiently similar to the present charge.

Evidence of independent crimes is admissible

if the state makes three showings: (1) that the evidence is offered, not to raise an improper inference regarding the character of the defendant, but for a proper purpose; (2) that

there is sufficient evidence that the defendant committed the independent act; and (3) that there is sufficient similarity between the independent act and the charged offense to demonstrate that the independent act is logically relevant to a material issue in dispute in the trial. See *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991).

*Mitchell v. State*, 265 Ga. 71, 71-72 (2) (453 SE2d 731) (1995).

After a hearing held pursuant to Uniform Superior Court Rules 31.1 and 31.3, the trial court found, pursuant to *Williams v. State*, supra, that there was sufficient similarity between the earlier offenses and the present offense so that the former tended to prove the latter, and the former was admissible to show intent, and that the probative value outweighed any of its undue prejudicial effect. We agree. In both cases, Hooker approached a Home Depot employee, accused the employee of being racist, called the employee a "cracker," became aggressive and ended up in a physical altercation with the employee. In the case here, he hit the employee with his fist and brass plates; in the first incident he lunged at the employee with a box-cutter.

Although Hooker contends that the crimes were too dissimilar because the similar transaction involved shoplifting, he was not alone, and he was outside the Home Depot when he was approached by an employee, "[t]he law does not require that a similar transaction crime be identical to the crime charged. There can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar." (Citation and punctuation omitted.) *Huff v. State*, 248 Ga. App. 233 (546 SE2d 24) (2001). A trial court's admission of similar transaction evidence will be upheld on appeal unless the ruling is clearly erroneous. *Garrett v. State*, 253 Ga. App. 779, 781 (3) (560 SE2d 338) (2002). Under this standard, there was no error in admission of the similar transaction evidence.

3. Hooker next contends that the trial court erred in refusing to declare a mistral after the state called him a "dangerous man" in its opening statement. According to Hooker, this was an improper comment on his character.

During the opening statement, the state commented that "the evidence will show that [Hooker] is a dangerous man." Hooker objected, and a conference was held outside the presence of the jury that was not transcribed. Both sides then continued with their opening statements, at the conclusion of which, Hooker approached the trial court and requested that the record be perfected with his objection to the state's comment that Hooker was a "dangerous man" because it improperly introduced character evidence. He also moved

for a mistrial. The trial court recalled that it had sustained Hooker's objection to the comment because "it was becoming argumentative," not for improperly injecting character. Hooker renewed his motion for mistrial, and asked for a curative instruction. The court asked Hooker what precautionary instruction he would like, and Hooker responded that "I would like the Court to address the fact that Ms. Scott's statements with regard to him being a dangerous man is close to injecting character in this case." The court replied that the statement

> does not inject character. It's an inference from the evidence, but we're not supposed to be doing that in opening statements, so I don't think it's really a character issue at all. . . . [The state's] going to argue the same thing at the end and she would be permitted to do so. So unless you tell me something else that you want to give in precautionary instructions, I don't know that it's really appropriate.

Generally, "[a] prosecuting attorney in an opening statement may state what he expects in good faith the evidence will show during trial of the case." *Ross v. State*, 233 Ga. App. 26, 27 (1) (503 SE2d 308) (1998). Moreover,

> [c]ounsel is permitted, in the sound discretion of the court, to argue all reasonable inferences and deductions which may be drawn from the evidence. . . . What the law forbids is the introduction into a case by way of argument of facts which are not in the record and are calculated to prejudice a party and render the trial unfair. . . . [F]igurative speech is a legitimate weapon in forensic warfare so long as the facts upon which it is founded are in evidence.

(Citations omitted.) *Haas v. State*, 146 Ga. App. 729, 730 (2) (247 SE2d 507) (1978).

The purpose of the opening statement is to give the jury and the court an outline of the evidence that the party anticipates presenting, whereas the purpose of the closing argument is to recount the evidence presented and suggest the conclusion demanded by that evidence. *Williams v. State*, 218 Ga. App. 571, 573 (2) (462 SE2d 457) (1995). While the inference that Hooker was a "dangerous man" was a conclusion that should have been reserved for closing once the evidence was presented, we find that the state's use of the term "dangerous man" was not an improper comment on Hooker's character and drew no unreasonable or improper inferences. Thus, we

discern no abuse of discretion in the trial court's refusal to grant Hooker's motion for mistrial.

However, even assuming that the term was improper, reversal of Hooker's conviction is not warranted. The test for reversible error is whether the argument, even if improper, in reasonable probability changed the result of the trial. *Bright v. State*, 265 Ga. 265, 285 (19) (a) (455 SE2d 37) (1995). Because of the overwhelming evidence of Hooker's guilt, we conclude that, even assuming the term "dangerous man" was objectionable, there is no reversible error. Id.

4. Hooker also asserts that the trial court erred by not declaring a mistrial when the officer testifying about the similar transaction mentioned that Hooker was arrested for shoplifting, thereby placing his character in issue.

The record reflects that testimony was presented about another assault at a Home Depot involving Hooker. When the officer testified about hearsay implicating Hooker in shoplifting from Home Depot, Hooker objected and the trial court sustained the objection and instructed the jury to disregard any inference or implication that Hooker was involved in shoplifting.

Defense counsel neither objected to the curative instruction nor moved for a mistrial following issuance of the curative instruction. Accordingly, Hooker has waived this issue on appeal. *Garcia v. State*, 271 Ga. App. 794, 796-797 (611 SE2d 92) (2005).

5. Hooker contends that the trial court erred in denying his new trial motion because he was not provided with effective assistance of counsel. Hooker complains of 14 instances in which he maintains that trial counsel's performance was deficient. However, he only supports four of these contentions with argument in his brief; thus, the remaining errors are waived.

To prove ineffective assistance, Hooker was required to show that counsel's performance was deficient and that this deficient performance prejudiced his defense. *Ellison v. State*, 242 Ga. App. 636, 638 (7) (530 SE2d 524) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The trial court's determination with respect to counsel's effectiveness will be upheld on appeal unless clearly erroneous. *Jackson v. State*, 209 Ga. App. 53, 56 (7) (432 SE2d 649) (1993).

(a) Hooker first complains that trial counsel was ineffective for failing to adequately investigate and prepare for his trial in that he met with Hooker only three times for one hour prior to trial. Hooker illuminates this complaint with no further argument. Accordingly, he has failed to satisfy the second prong of the *Strickland* standard by not demonstrating that trial counsel's performance prejudiced his defense such that the outcome of his trial would have been different.

Thus, this contention must fail. See *Vanholten v. State*, 271 Ga. App. 782 (610 SE2d 555) (2005).

(b) With respect to Hooker's contentions that his trial counsel erred by failing to object to the introduction of brass plates that were not similar to the ones he returned to Home Depot, and to the sentencing sheet of his similar transaction going out with the jury, the record shows that Hooker acted as co-counsel at his trial. "When a criminal defendant elects to represent himself, either solely or in conjunction with representation or assistance by an attorney, he will not thereafter be heard to assert a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel." (Citations and punctuation omitted.) *Williams v. State*, 192 Ga. App. 317, 319 (3) (384 SE2d 877) (1989).

(c) Hooker also complains that trial counsel was ineffective for failing to file a *Jackson-Denno* motion as to his statement to police officers while he was in custody. We cannot determine from Hooker's brief which statement he made to police that he feels should have been subject to a *Jackson-Denno* hearing. However, from the trial counsel's testimony at the motion for new trial hearing, it appears that the statement related to Hooker's admission to police that he hit the victim with his fist. Trial counsel testified that he had no prior knowledge of the statement, and it was elicited by Hooker in his cross-examination of the officer. Again, we reiterate that Hooker cannot make an ineffective claim with respect to a stage in the trial proceedings during which he acted as co-counsel. *Williams v. State*, supra, 192 Ga. App. at 319 (3).

6. Hooker last complains that the trial court erred by not granting his oral motion for the continuance of his sentencing hearing. He appears to argue that the trial court's denial precluded the availability of certain witnesses to testify at the hearing. He does not, however, specify who the witnesses are and what their testimony would have been.

The record belies Hooker's contention that the trial court denied his motion for a continuance. The sentencing hearing took place seven days after the trial. Although he had initially declined a pre-sentencing investigation, on the day of the hearing, he requested a pre-sentence hearing and a continuance for more time to find witnesses, which the trial court granted. The trial court informed Hooker that, if at the next sentencing hearing "[the witnesses are] not under subpoena, I'm not going to continue the case." Approximately one week later, a second sentencing hearing was held, and upon Hooker's motion for a second continuance, the trial court considered the motion and even recessed the hearing to allow Hooker the opportunity to telephone any potential witnesses to get their expected testimony. After Hooker was unsuccessful in contacting his

potential witnesses, the trial court denied the motion, noting that Hooker had no witnesses under subpoena, that he had not been diligent in obtaining the testimony of the witnesses, and that he had failed to demonstrate what the witnesses would testify to.

"Because [Hooker] failed to identify specific witnesses or evidence to be offered on mitigation, the trial court did not abuse its discretion in denying the motion for [a second] continuance." *Jackson v. State*, 266 Ga. 308, 309 (3) (467 SE2d 495) (1996). Moreover, Hooker "failed to demonstrate any harm from the denial of the continuance." (Citation and punctuation omitted.) *Schwindler v. State*, 254 Ga. App. 579, 590 (16) (563 SE2d 154) (2002).

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED MARCH 23, 2006.

*Louis M. Turchiarelli*, for appellant.
*Garry T. Moss, District Attorney, Lawton W. Scott, Assistant District Attorney*, for appellee.